**UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE DIRECTOR OF THE**
**UNITED STATES PATENT AND TRADEMARK OFFICE**

In the Matter of                              )
                                              )
Julian Arnold Haffner                         )    Proceeding No. D2023-35
                                              )
Respondent                                    )
_____ )

## FINAL ORDER

The Director of the Office of Enrollment and Discipline ("OED Director") for the

United States Patent and Trademark Office ("USPTO" or "Office") and Julian Arnold

Haffner ("Respondent") have submitted a Proposed Settlement Agreement ("Agreement")

to the Under Secretary of Commerce for Intellectual Property and Director of the United

States Patent and Trademark Office ("USPTO Director") for approval.

The Agreement, which resolves all disciplinary action by the USPTO arising from the

stipulated facts set forth below, is hereby approved. This Final Order sets forth the parties'

stipulated facts, legal conclusions, and sanctions.

### Jurisdiction

1.    Respondent is an attorney who is licensed to practice in the State of Maryland

and who is in good standing in that jurisdiction. Given his Maryland license, he is

authorized to practice before the USPTO in trademark and other non-patent matters. *See*

37 C.F.R. § 11.14(a). At all times relevant hereto, Respondent was engaged in practice

before the Office in trademark matters.

2.    Respondent is subject to the USPTO Rules of Professional Conduct,

37 C.F.R. § 11.101 *et seq.*

1

**Exhibit 1**

3.    The USPTO Director has jurisdiction over this matter pursuant to

35 U.S.C. §§ 2(b)(2)(D) and 32 and 37 C.F.R. §§ 11.19, 11.20, 11.26, 11.32, and 11.39.

**Background**

Relevant USPTO Trademark Rules of Practice and Trademark Regulations

*The U.S. Counsel Rule*

4.    Effective August 3, 2019, any foreign-domiciled trademark applicant or

registrant must be represented before the USPTO by an attorney who is licensed to

practice law in the United States. *See* 37 C.F.R. § 2.11(a); *see also Requirement of U.S.

Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 31498

(July 2, 2019) ("the U.S. Counsel Rule").

5.    In part, the U.S. Counsel Rule was intended to (1) increase compliance with

U.S. trademark law and USPTO regulations, (2) improve the accuracy of trademark

submissions to the USPTO, and (3) safeguard the integrity of the U.S. trademark register.

*See* 84 Fed. Reg. 31498.

*37 C.F.R. § 2.193 – Signature Requirements for Trademark Documents*

6.    The USPTO trademark signature rules require that (a) all signatures on

trademark documents be signed by a proper person, (b) trademark documents be

personally signed by the signatory named on the document, and (c) a person electronically

signing a document must personally enter any combination of letters, numbers, spaces,

and/or punctuation marks that he or he has adopted as a signature and that combination be

placed between two forward slash ("/") symbols in the signature block on the electronic

submission. *See* 37 C.F.R. §§ 2.193(a), (c), and (e); and 37 C.F.R. § 11.18(a).

2

7.    The Trademark Manual of Examining Procedure ("TMEP") provides additional clear and straightforward guidance to practitioners regarding the USPTO trademark electronic signature rules' requirement that the named signatory sign the document:

> All documents must be personally signed. 37 C.F.R. §§ 2.193(a)(1), (c)(1); 11.18(a).
>
> The person(s) identified as the signatory must manually enter the elements of the electronic signature.
>
> **Another person (*e.g.*, paralegal, legal assistant, or secretary) may not sign the name of a qualified practitioner or other authorized signatory.**
>
> Just as signing the name of another person on paper does not serve as the signature of the person whose name is written, typing the electronic signature of another person is not a valid signature by that person.

TMEP § 611.01(c) (case citations omitted) (line spacing added).

*Adverse Consequences to Applications and Issued Registration due to Violations of USPTO Trademark Signature Rules*

8.    If the signature on a trademark application or other submission fails to comply with 37 C.F.R. § 2.193(a) or (e) because it was entered by someone other than the named signatory or not signed by a proper person, then the submission is improperly executed, cannot be relied upon to support registration, and normally renders the application void. *See* 84 Fed. Reg. at 31498 (stating that "[i]f signed by a person determined to be an improper person, the registration may be invalid."). *See also In re Yusha Zhang,* 2021 TTAB LEXIS 465, *10, *13 (Dir. USPTO Dec. 10, 2021); *In re Dermahose Inc.*, 82 USPQ2d 1793 (TTAB 2007); *Ex parte Hipkins,* 20 USPQ2d 1694, 1696-97 (BPAI 1991); *In re Cowan,* 18 USPQ2d 1407, 1409 (Comm'r Pats. 1990).

When trademark filings are impermissibly signed and filed with the USPTO, the integrity of the federal trademark registration process is adversely affected.

9.   Trademark applications contain declarations that are signed under penalty of perjury, with false statements being subject to punishment under 18 U.S.C. § 1001. Signatories to declarations in trademark applications make specific representations regarding applicants' use of the mark in commerce and/or their intent to use the mark in commerce. The USPTO relies on such declarations signed under penalty of perjury in trademark applications in the course of examining trademark applications and issuing registrations.

*Certifications to the USPTO when Presenting Papers*

10.   A practitioner makes important certifications via 37 C.F.R. § 11.18 whenever presenting (*e.g.*, by signing, filing, submitting, or later advocating) any paper to the USPTO. Specifically, the practitioner certifies that all statements made on his or her own knowledge are true, and that all statements based on the practitioner's information and knowledge are believed to be true. *See* 37 C.F.R. § 11.18(b)(1).

11.   The practitioner also certifies that:

> [t]o the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances (i) the paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of any proceeding before the Office; (ii) the other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (iii) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (iv) the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a lack of information or belief.

37 C.F.R. § 11.18(b)(2).

4

12. Accordingly, a practitioner who presents any paper to the USPTO certifies that the practitioner has conducted an inquiry reasonable under the circumstances that supports the factual assertions set forth in the paper. *See* 37 C.F.R. § 11.18(b)(2)(iii).

*USPTO.gov Sponsored Accounts*

13. As of August 6, 2022, at the latest, in order to file trademark documents with the agency's Trademark Electronic Application System ("TEAS"), applicants or their attorneys must first register for and use a USPTO.gov account. Each individual using a USPTO.gov account must comply with the Terms of Use for USPTO Websites and the USPTO Trademark Verified USPTO.gov Account Agreement. Pursuant to the USPTO Trademark Verified USPTO.gov Account Agreement, (a) qualified attorneys are permitted to sponsor support staff who are directly employed by the attorney, the attorney's law firm, or the attorney's company, provided the support staff works under the attorney's supervision; and (b) sponsoring attorneys agree that they will not attempt to sponsor any foreign or domestic company, group, client, agent, attorney or other practitioner.

## Joint Stipulated Facts

A. Background

14. Respondent is an attorney who became licensed to practice in the State of Maryland on December 18, 2002.

15. Respondent is a partner with the law firm of YK Law LLP.

16. At all relevant times, Lyptus Partners Business Services Pvt. Ltd. ("Lyptus Partners") was a law firm located in Delhi, India, that provides, among other things, trademark related services.

5

17.    Since at least September 2019, Lyptus Partners has advertised trademark services, including filing and prosecuting trademark applications with the USPTO, on the freelance marketplace website Fiverr, and the CEO of Lyptus Partners stated "I will be your US trademark attorney," despite the fact that he is not a U.S. licensed attorney or otherwise authorized to represent other persons before the USPTO in trademark matters.

18.    On or about August 2, 2022, Lyptus Partners placed a job posting on Upwork, a website where professional work opportunities are advertised. The job posting stated as follows:

> We are an Indian law firm. We have around 500+ applications to file with the USPTO per month. We are looking for a U.S. attorney who can partner with us on this project.
>
> These are the arrangements:
>
> 1. Expected volume of applications: 500-600
>
> 2. You can expect $5000 in a month for around 500 application [sic])
>
> 3. Reply to substantive OAs and other complicated issues are not included and you can tell us about your standard rates for those, which we will charge from the clients.
>
> 4. 2 of our best trademark associates (with 2 years of experience in US trademark applications) will be assigned to you for assisting you at all times.
>
> This is how we want to proceed
>
> 1. Our team will draft the applications and use your details for the attorney section.
>
> 2. Once approved by you, our team will file the applications.
>
> 3. We will add our email as a secondary email so that we can take care of all communications with respect to the applications.
>
> We have come up with this arrangement to save your time.
>
> Please note: the fees are just for your representation in the application and other activities will pay higher as per your rates. We expect you to give 20-30 minutes

6

every day at max.

19.     On August 4, 2022, Respondent responded to the Upwork posting and communicated with an employee of Lyptus Partners using the messaging application WhatsApp about entering into an agreement with Lyptus Partners.

20.     On August 5, 2022, Respondent entered into an agreement with Lyptus Partners, providing for a $1000 payment for Respondent to serve as attorney of record for 150 trademark applications and $10 per application for each additional application thereafter.

21.     Between August 8, 2022 and September 16, 2022, Lyptus Partners sent Respondent one hundred seventy-four (174) pre-prepared draft trademark applications to review.

B.  Respondent Impermissibly Sponsored Foreign Individuals on His USPTO.gov Account

22.  Respondent opened a USPTO.gov account for himself for use in his representing persons before the Office in trademark matters (*e.g.*, preparing, reviewing, signing, and filing trademark documents with the USPTO).

23.     After entering into the agreement with Lyptus Partners, on or about August 6, 2022, Respondent sponsored two Lyptus Partners employees for USPTO.gov support staff accounts. Neither Lyptus Partners employee was authorized to represent other persons before the USPTO in trademark matters. The two Lyptus Partners employees were not under Respondent's direct supervision or employees of Respondent's firm.

24.     Respondent sponsored the employees of Lyptus Partners so that the sponsored account holders could assist Respondent in his representing Lyptus customers before the Office in trademark matters. To the extent Respondent sponsored the Lyptus

Partners employees after August 6, 2022, Respondent's sponsorship of these persons violated Respondent's sponsorship agreement with the USPTO.

C. Respondent's Additional Misconduct that Adversely Affected the Integrity of the USPTO Trademark Registration System

25. Between August 8, 2022 and September 16, 2022, Lyptus Partners sent Respondent one hundred seventy-four (174) pre-prepared draft trademark applications to review.

26. Most or all of the pre-prepared draft trademark applications Respondent was responsible for reviewing were based on use in commerce under 15 U.S.C. § 1051(a).

27. The pre-prepared draft trademark applications were prepared by employees of Lyptus Partners. Respondent played no role in the drafting of the trademark applications.

28. Following his alleged review of the pre-prepared draft trademark applications, Respondent approved each of the 174 applications for filing by a Lyptus Partners employee.

29. After receiving approval from Respondent, employees of Lyptus Partners used the USPTO.gov support staff accounts sponsored by Respondent to file each of the 174 trademark applications, with Respondent designated as the attorney of record. Lyptus Partners used the USPTO.gov credentials in order to access TEAS and to prepare and file the trademark applications.

30. Respondent arguably did not conduct an inquiry reasonable under the circumstances to ensure that the factual contentions set forth in each of the 174 trademark applications, including that the trademarks were in use in commerce and the specimens showed the trademark as used in commerce, had evidentiary support.

31. Many of the trademark applications approved by Respondent for filing had issues that Respondent should have identified, such as specimens that appeared to be inauthentic or did not actually demonstrate use of the mark in commerce, duplicate or redundant applications, and applications containing misstatements or clerical errors.

32. Respondent never raised any objection to any of the 174 trademark applications that he was responsible for reviewing.

33. Although the trademark applications were available to Respondent after filing, Respondent did not review the applications after they were filed to ensure that they had not been altered by Lyptus Partners following his approval.

34. Each of the 174 trademark applications filed by Lyptus Partners contained a declaration purportedly signed by the trademark applicant.

35. Each of the applications was signed using the "DIRECT" signature option offered by the TEAS program, which requires the filer to enter the signature on the declaration contemporaneously with the filing.

36. According to the IP addresses collected by the TEAS program, each of the 174 applications was filed from India and not where the applicant was domiciled.

37. An employee of Lyptus Partners signed the applicant's name on each trademark application prior to filing, rather than the applicant personally signing as required by USPTO rules and regulations.

38. Respondent did not take any steps to ensure that the trademark applications were signed by the trademark applicants as required. Instead, Respondent relied on employees of Lyptus Partners to handle the securing of applicant signatures.

9

39.    By not ensuring that the trademark applications were properly signed in accordance with USPTO rules and regulations, Respondent put the applicants' intellectual property rights at risk.

40.    On September 16, 2022, the USPTO's Deputy Commissioner for Trademark Examination Policy issued a Sponsored Account Suspension Order, which found that Lyptus Partners is a foreign company that does not employ any U.S.-licensed attorneys and that uses Respondent's name as the attorney of record on trademark applications in an effort to obfuscate its unauthorized practice before the USPTO, and which determined that Respondent violated the USPTO Trademark Verified USPTO.gov Account Agreement and revoked all of Respondent's sponsorship privileges.

41.    Following the issuance of the suspension order, the USPTO placed the 174 applications on hold based on Respondent's observed violations of rules and regulations governing practice before the USPTO in trademark matters.

D.    Respondent Did Not Respond Fully to an OED RFI

42.    On December 7, 2022, OED lawfully issued and sent a Request for Information and Evidence Under 37 C.F.R. § 11.22(f) ("RFI") to Respondent seeking information about his relationship with Lyptus Partners and his trademark practice.

43.    The RFI requested a response by January 9, 2023.

44.    Although Respondent received the initial RFI, he did not respond by the January 9 deadline.

45.    On January 31, 2023, Respondent confirmed by email receipt of the initial RFI, but he provided no indication that he intended to respond. As a result, on February 2, 2023,

OED mailed a lack-of-response notice to Respondent with respect to the December 7, 2022 RFI. On February 13, 2023, Respondent responded to the initial RFI.

46. On March 16, 2023, Respondent voluntarily participated in an interview with OED. During the interview, Respondent informed OED that he had communicated with Lyptus Partners by email and the text messaging application WhatsApp.

47. Shortly after the interview, OED emailed to Respondent a request for copies of all correspondence between Respondent and Lyptus Partners, including text messages and emails.

48. On March 22, 2023, having received no response, OED again emailed Respondent requesting the correspondence and set a March 24, 2023 deadline for the production. On March 31, 2023, having received no response, OED emailed Respondent requesting a telephone call as soon as possible. On April 4, 2023, having not heard from Respondent, OED emailed a Second Lack of Response Notice to Respondent, again requesting the correspondence and setting a deadline of April 14, 2023.

49. The same day, on April 4, 2023, Respondent emailed OED with a copy of WhatsApp text messages between himself and Lyptus Partners. Respondent stated that he would "follow up with email exchanges shortly."

50. On April 7, 2023, having not received any follow up from Respondent, OED emailed Respondent requesting a telephone call. Respondent did not respond to the email and has never provided copies of his emails with Lyptus Partners.

51. By withholding his emails with Lyptus Partners, Respondent deprived OED of important evidence without justification.

11

**Additional Considerations**

52.    Respondent represents that he has never been the subject of professional discipline by the USPTO, any court, or any state bar.

53.    Respondent voluntarily participated in an OED interview at OED's request.

**Joint Legal Conclusions**

54.    Respondent acknowledges that, based on the information contained in the Joint Stipulated Facts, above, Respondent's acts and omissions violated the following provisions of the USPTO Rules of Professional Conduct:

a.  37 C.F.R. § 11.101 (practitioner shall provide competent representation) by, *inter alia*, (i) failing to adequately review trademark applications for which he served as attorney of record; and (ii) failing to put proper procedures in place to ensure Lyptus Partners employees complied with USPTO signature requirements, which led to impermissibly signed trademark applications being filed with the USPTO;

b.  37 C.F.R. § 11.103 (not acting with reasonable diligence in representing a client) by, *inter alia*, (i) failing to adequately review trademark applications for which he served as attorney of record; (ii) failing to put proper procedures in place to ensure Lyptus Partners employees complied with USPTO signature requirements, which led to impermissibly signed trademark applications being filed with the USPTO; and (iii) violating the USPTO Trademark Verified USPTO.gov Account Agreement by sponsoring prohibited persons for USPTO.gov support staff accounts;

c.  37 C.F.R. § 11.503(a) (not making reasonable efforts to ensure that Respondent's firm had in effect measures giving reasonable assurance that the conduct of non-practitioner assistants was compatible with the professional obligations of the practitioner) by, *inter alia*, allowing Lyptus Partners employees to prepare and file with the USPTO trademark applications for which he served as attorney of record without adequately reviewing them and failing to put proper procedures in place to ensure Lyptus Partners employees complied with USPTO signature requirements, which led to impermissibly signed trademark applications being filed with the USPTO;

d.  37 C.F.R. § 11.505 (assisting in the unauthorized practice of law) by, *inter alia*, allowing Lyptus Partners employees to prepare and file with the USPTO trademark applications for which he served as attorney of record without adequately reviewing them;

12

e.   37 C.F.R. § 11.801(b) (knowingly fail to respond fully to a request for information issued by the Office of Enrollment and Discipline) by, *inter alia*, failing to provide OED with copies of certain documents as requested;

f.   37 C.F.R. § 11.804(c) (engaging in conduct involving dishonesty or misrepresentation) by, *inter alia*, allowing Lyptus Partners employees to prepare and file with the USPTO trademark applications that bore his attorney credentials so as to appear that he had adequately reviewed the applications prior to filing when he had not; and

g.   37 C.F.R. § 11.804(d) (engaging in conduct that is prejudicial to the integrity of the USPTO trademark examination and registration processes) by, *inter alia*, allowing Lyptus Partners employees to prepare and file with the USPTO trademark applications that bore his attorney credentials so as to appear that he had adequately reviewed the applications prior to filing when he had not and failing to put proper procedures in place to ensure that trademark applications in which he was the attorney of record complied with USPTO signature requirements, which led to impermissibly signed trademark applications being filed with the USPTO.

### Agreed-Upon Sanction

55.   Respondent has freely and voluntarily agreed, and it is hereby ORDERED that:

a.   Respondent is suspended from practice before the Office for a period of sixty (60) days;

b.   Respondent is to remain suspended from practice before the USPTO until the OED Director grants a petition requesting Respondent's reinstatement pursuant to 37 C.F.R. § 11.60;

c.   Respondent shall serve a probationary period that commences on the date this Final Order is signed and terminates twelve (12) months after a decision by the OED Director granting a petition seeking Respondent's reinstatement to practice before the USPTO;

d.   Respondent shall comply fully with 37 C.F.R. § 11.58;

e.   Respondent may satisfy his obligations under 37 C.F.R. § 11.58(c)(3)(i) for

13

those clients who are domiciled in a foreign country and have immediate or prospective business before the Office in patent, trademark, or other non-patent matters (*e.g.*, trademark applicants, parties before the USPTO Trademark Trial and Appeal Board, patent applicants, parties before the USPTO Patent Trial and Appeal Board) by emailing, in the client's native language, the requisite 37 C.F.R. § 11.58 notices and information (including a copy of this Final Order that has been correctly translated into the client's native language) to:

1. the email address for each client and, if applicable, the email address as set forth in the "Applicant's Information" portion of each client's trademark application, but only if such email address is an email address belonging to the client and one that Respondent reasonably believes to which the client has direct access (*i.e.*, not the email address belonging to a foreign referring entity);

2. an email address belonging to the client and one that Respondent reasonably believes to which the client has direct access (*i.e.*, not the email address belonging to a foreign-domiciled third person or a foreign domiciled entity who referred the matter to Respondent); or

3. the foreign-domiciled third person or a foreign-domiciled entity who referred the matter to Respondent, but only if:

   A. Respondent takes reasonable measures to ensure that the foreign-domiciled third person or a foreign-domiciled entity thereafter promptly forwards Respondent's email to the client with the translated Final Order attached and Respondent is copied on the forwarded email;

   B. Respondent takes reasonable measures to learn from the foreign-domiciled third person or a foreign-domiciled entity that the client actually received the Respondent's email and translated Final Order forwarded to the client;

   C. Respondent's affidavit submitted pursuant to 37 C.F.R. § 11.58(d) sets forth the details of her reasonable measures that are required by subparagraphs (3)(A) and (B) immediately above; and

14

      D. any petition for reinstatement filed by or on behalf of Respondent sets forth the details of her reasonable measures that are required by subparagraphs (3)(A) and (B) immediately above;

f.   Respondent shall be granted limited recognition pursuant to 37 C.F.R. § 11.58(f) for thirty (30) days starting on the date of this Final Order so that Respondent may endeavor to conclude work on behalf of clients on any matters pending before the Office and, if such work cannot be concluded within such thirty (30) days, Respondent shall so advise each such client so that the client may make other arrangements;

g.   Effective the date of the expiration of the 30-day period of limited recognition afforded to Respondent under 37 C.F.R. § 11.58(f), the USPTO is hereby authorized to disable or suspend any USPTO.gov accounts registered to Respondent as of the date of this Final Order (including, but not limited to, all accounts that Respondent has ever established, sponsored, used in connection with any trademark matter);

h.   Respondent shall not apply for a USPTO verified Electronic System account, shall not obtain a USPTO verified Electronic System account, nor shall he have his name added to a USPTO verified Electronic System account, unless and until he is reinstated to practice before the USPTO;

i.   Immediately upon expiration of the 30-day period of limited recognition afforded to Respondent under § 11.58(f), Respondent is prohibited from using, assessing, or assisting others in using or accessing any USPTO.gov account(s) or other USPTO filing systems for preparing or filing documents with the USPTO;

15

j.      Until a petition seeking Respondent's reinstatement to practice before the USPTO is granted pursuant to 37 C.F.R. § 11.60, Respondent shall be prohibited, and the USPTO is authorized to disallow Respondent, from the following: (1) opening or activating any USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; (2) applying for, or attempting to apply for any USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; (3) verifying, or attempting to verify, any other person's credentials in connection with USPTO.gov account(s) to be used for preparing or filing documents with the USPTO; and (4) sponsoring or attempting to sponsor USPTO.gov account(s) to be used for preparing or filing documents with the USPTO;

k.      Nothing herein shall obligate the USPTO to take action, *sua sponte*, to re-activate any USPTO.gov account disabled or suspended pursuant to this order; rather, it is Respondent's sole responsibility to initiate any such re-activation of any such USPTO.gov account;

l.      Respondent, within twenty-one (21) days of the date of this Final Order, shall send a letter to the USPTO Office of Trademark Examination Policy that lists all applications and other trademark documents on which Respondent is the named signatory but where Respondent did not sign the application or document. The list is to include, but not necessarily be limited to, the one hundred seventy-four (174) trademark applications in which Lyptus Partners signed his name, and any other application in which the named signatory did not sign the application or document. For each such application and trademark document, Respondent shall state the type

16

of document (*e.g.*, application, statement of use, response to Office action), the filing date of the document, and the associated application serial number or trademark registration number. The list shall be accompanied by a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he did not sign the application or document or that the named signatory did not sign the application or document;

m. Respondent shall cooperate fully with the USPTO in any present or future USPTO inquiry made into improper filings by Lyptus Partners or any persons or entities with whom Respondent worked in connection with trademark documents submitted to the USPTO;

n. (1) If the OED Director is of the good faith opinion that Respondent, during Respondent's probationary period, failed to comply with any provision of the Agreement, this Final Order (including compliance with 37 C.F.R. § 11.58), or any provision of the USPTO Rules of Professional Conduct, the OED Director shall:

>(A) issue to Respondent an Order to Show Cause why the USPTO Director should not enter an order immediately suspending the Respondent for up to an additional ten (10) months for the violations set forth in the Joint Legal Conclusions, above;

>(B) send the Order to Show Cause to Respondent at the last address of record Respondent furnished to the OED Director;

>(C) grant Respondent fifteen (15) days to respond to the Order to Show Cause; and

>(2) in the event that after the 15-day period for response and consideration of the response, if any, received from Respondent, the OED Director continues to be of the opinion that Respondent, during Respondent's probationary period, failed to comply with the USPTO Rules of Professional Conduct, the OED Director shall:

17

(A) deliver to the USPTO Director: (i) the Order to Show Cause; (ii) Respondent's response to the Order to Show Cause, if any; and (iii) argument and evidence supporting the OED Director's position; and

(B) request that the USPTO Director enter an order immediately suspending Respondent for up to an additional ten (10) months for the violations set forth in the Joint Legal Conclusions above;

o.     Nothing herein shall prevent the OED Director from seeking discrete discipline for any misconduct that formed the basis for an Order to Show Cause issued pursuant to the preceding subparagraph;

p.     In the event the Respondent seeks a review of any action taken pursuant to subparagraph n., above, such review shall not operate to postpone or otherwise hold in abeyance the suspension;

q.     While Respondent is on probation, Respondent shall, at least on a monthly basis, (i) search the USPTO Trademark Electronic Search System ("TESS") or the agency's trademark electronic search system that replaces TESS for applications identifying him as the attorney of record; and (ii) promptly inform in writing the USPTO Office of Trademark Examination Policy of each trademark document filing identifying him as the attorney of record that was made without his knowledge or consent;

r.     While Respondent is on probation, Respondent shall, at least on a quarterly basis, submit a written report to the OED Director stating that he has completed the monthly searches of the USPTO TESS (or the agency's trademark electronic search system replacing TESS) database, and, as applicable, (i) stating that he identified no applications or other trademark filing in which he was named as the attorney of record that were not made by him or without his knowledge and

18

consent; or (ii) providing copies of correspondence sent to the USPTO Office of Trademark Examination Policy as described in the preceding subparagraph;

s.       As a condition of being reinstated to practice before the USPTO, Respondent shall provide to the OED Director a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he has successfully completed 3 hours of continuing legal education credit on trademark practice before the USPTO;

t.       As a condition of being reinstated, Respondent shall provide to the OED Director a declaration, affidavit, or statement in compliance with 28 U.S.C. § 1746 signed by Respondent stating that he has reviewed thoroughly all provisions of the Trademark Manual of Examining Procedure, including but not limited to, the provisions of the USPTO's signature requirements;

u.       Nothing in this Final Order shall prevent the Office from considering the record of this disciplinary proceeding, including this Final Order: (1) when addressing any further complaint or evidence of similar misconduct concerning Respondent brought to the attention of the Office; and/or (2) in any future disciplinary proceeding against Respondent (i) as an aggravating factor to be taken into consideration in determining any discipline to be imposed, and/or (ii) to rebut any statement or representation by or on Respondent's behalf; and/or (3) in connection with any request for reconsideration submitted by Respondent pursuant to 37 C.F.R. § 11.60;

19

v.     The OED Director shall electronically publish this Final Order publicly

including at the OED's electronic FOIA Reading Room, which is publicly

accessible through the Office's website at: https://foiadocuments.uspto.gov/oed/;

w.     The OED Director shall publish a notice publicly including in the Official

Gazette that is materially consistent with the following:

**Notice of Suspension and Probation**

This notice concerns Mr. Julian Arnold Haffner of Gaithersburg,
Maryland, an attorney licensed in the State of Maryland who engaged in
practice before the United States Patent and Trademark Office ("USPTO")
or ("Office") in trademark matters. The USPTO Director has suspended
Mr. Haffner from practice before the Office for a period of sixty (60) days
and placed him on probation for violating 37 C.F.R. §§ 11.101, 11.103,
11.503(a), 11.505, 11.801(b), 11.804(c), and 11.804(d) of the USPTO
Rules of Professional Conduct.

In violation of the terms of the USPTO.gov Account Agreement, Mr.
Haffner sponsored foreign-based employees of Lyptus Partners on his
USPTO.gov account. Mr. Haffner allowed Lyptus Partners to prepare and
file one hundred seventy-four (174) trademark applications with the
USPTO on behalf of foreign-domiciled applicants. Mr. Haffner served as
attorney for each of these applicants pursuant to the agency's U.S.
Counsel Rule (see *Requirement of U.S. Licensed Attorney for Foreign
Trademark Applicants and Registrants*, 84 Fed. Reg. 31498 (July 2,
2019)). When filing the trademark applications, Lyptus Partners signed the
applicants' name on the applications in violation of the USPTO trademark
signature rules, which actually or potentially harmed Mr. Haffner's
clients' trademark rights. Mr. Haffner did not exercise appropriate
thoroughness in reviewing the trademark applications that he received
from Lyptus Partners. Many of the trademark applications that Respondent
approved for filing had issues that Respondent should have identified,
such as specimens that appeared to be inauthentic or did not actually
demonstrate use of the mark in commerce, duplicate or redundant
applications, and applications containing misstatements or clerical errors.
Mr. Hafner's actions violated his obligations under the U.S. Counsel Rule
and 37 C.F.R. § 11.18. As a result of Mr. Haffner's improper sponsorship,
the USPTO revoked all of his sponsorship privileges.

During an investigation into Mr. Haffner's representation of the
applications that were filed by Lyptus Partners, the USPTO sent Mr.
Haffner a Request for Information and Evidence ("RFI") by certified mail

20

at the address that Mr. Haffner provided to the USPTO pursuant to 37 C.F.R. § 11.11. Mr. Haffner received and responded to the RFI. He participated in an interview with OED. He also produced WhatsApp chat messages between himself and Lyptus Partners. However, Mr. Haffner did not fully respond to the RFI as he did not produce certain documents requested by OED.

Mr. Haffner represents that he has not been previously disciplined by the USPTO, and he represents that he has never been the subject of professional discipline by any court or state bar.

The USPTO has published ample, readily available information for practitioners regarding what is competent practice before the Office in trademark matters. In particular, the agency maintains a webpage regarding important trademark information including specific links to relevant laws, rules, regulations, and rulemaking. (See www.uspto.gov/trademarks) The agency publishes online and regularly updates its Trademark Manual of Examining Procedure ("TMEP") (*See* tmep.uspto.gov/RDMS/TMEP/current) The TMEP provides trademark practitioners, *inter alia*, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The TMEP provides unambiguous information about the agency's signature requirements at TMEP § 611.01(c) (stating, in part, "All documents must be personally signed or bear an electronic signature that was personally entered by the named signatory"). 37 C.F.R. §2.193(a)(1), (c)(1). Another person (*e.g.*, paralegal, legal assistant, secretary) may not sign or enter the name of an attorney or other authorized signatory. *See In re Dermahose Inc.*, 82 USPQ2d 1793 (TTAB 2007); *In re Cowan*, 18 USPQ2d 1407 (Comm'r Pats. 1990)." (parenthesis in original)). When trademark filings are impermissibly signed and filed with the USPTO, the integrity of the federal trademark registration process is adversely affected. Therefore, practitioners who represent applicants, registrants, or others before the USPTO in trademark matters — including those who serve as U.S. counsel for foreign-domiciled clients — are reasonably expected to know (a) the laws, rules, regulations, and procedures pertaining to their representation of their trademark clients, and (b) the potential adverse consequences to clients' intellectual property rights in trademark applications and registrations as well as to the integrity of the U.S. trademark registration system when such laws, rules, regulations, or procedures are violated.

The USPTO has also published ample information about the U.S. Counsel Rule. *See, e.g., Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 FR 31498 (Final Rule) (July 2, 2019); 37 C.F.R. § 2.11 (Requirement for representation); TMEP § 601. There is also ample, readily available information for practitioners

regarding what is ethical practice before the Office in trademark matters. (See https://foiadocuments.uspto.gov/oed.)

Therefore, practitioners who represent applicants, registrants, or others before the USPTO in trademark matters — including those who serve as U.S. counsel for foreign-domiciled clients — are reasonably expected to know (a) the provisions of the USPTO Rules of Professional Conduct implicated by such representation, and (b) the potential disciplinary consequences when such provisions of the USPTO Rules of Professional Conduct are violated.

This action is the result of a settlement agreement between Mr. Haffner and the OED Director pursuant to the provisions of 35 U.S.C. §§ 2(b)(2)(D) and 32, and 37 C.F.R. §§ 11.19, 11.20, and 11.26. Disciplinary decisions involving practitioners are posted for public reading at the Office of Enrollment and Discipline Reading Room accessible at: https://foiadocuments.uspto.gov/oed;

x.  Based on Respondent's agreement to do so, Respondent waives all rights to seek reconsideration of this Final Order under 37 C.F.R. § 11.56, waives the right to have this Final Order reviewed under 37 C.F.R. § 11.57, and waives the right otherwise to appeal or challenge this Final Order in any manner;

y.  Within a reasonable period after the entry of this Final Order, the OED Director shall file a motion dismissing the pending disciplinary action without prejudice; and

z.  As a condition of his probation, Respondent shall pay in full the USPTO's allowable costs described in 37 C.F.R. § 11.60 incurred by the USPTO in connection with the institution, prosecution, and dismissal of the formal disciplinary proceeding against Respondent within sixty (60) days of being informed in writing of such costs.

(signature page follows)

22

(signature page In re Haffner, D2023-35)

Users,            Digitally signed by
Shewchuk,         Users, Shewchuk, David
                  Date: 2024.05.21
David             22:06:07 -04'00'
_____                    _____
David Shewchuk                                   Date
Deputy General Counsel for General Law
United States Patent and Trademark Office

on delegated authority by

Katherine K. Vidal
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Final Order was sent, on this day, to the parties in the manner indicated below-

Via e-mail:

Julian Haffner

███████████████

*Respondent*

Via e-mail:

Melinda DeAtley
Hendrik deBoer
Melinda.deatley@uspto.gov
Hendrik.deBoer@uspto.gov
████████████████

*Counsel for the OED Director*

5/22/2024
Date

United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450